Johnny R. CROCKER, Individually and as Representative of the Estate of Debbie Kay Crocker, Robby Joe Crocker, Billy Jack Crocker, and Billie Smith, Appellants,

v.

PAULYNE'S NURSING HOME, INC. a/k/a the Rembrandt Center, the Estate of Wentworth Carter, Norma Carter and the Carter Living Trust, Appellees.

No. 05–01–01643–CV.

Court of Appeals of Texas, Dallas.

Nov. 8, 2002.

Rehearing Overruled Feb. 7, 2003.

William J. Dunleavy, Windle Turley, P.C., Thomas B. Cowart, Law Office of Windle Turley, P.C., Dallas, for Appellant.

Shannon Welch, Sullivan, Parker & Cook, L.L.C., Dallas, for Appellee.

Before Justices WHITTINGTON, O'NEILL, and LAGARDE.[1]

## OPINION

Opinion By Justice O'NEILL.

In this wrongful death and survival action, appellants Johnny R. Crocker, individually and as representative of the Estate of Debbie Kay Crocker, Robby Joe Crocker, Billy Jack Crocker, and Billie Smith appeal a "no evidence" summary judgment granted in favor of Paulyne's Nursing Home, Inc. a/k/a the Rembrandt Center, L.L.C., the Estate of Wentworth Carter, Norma Carter, and the Carter Living Trust (referred to collectively as the Rembrandt Center). Appellants present nine issues generally contending (1) the Rembrandt Center's motion for summary judgment was legally insufficient, (2) the Rembrandt Center waived its objections to appellants' summary judgment evidence, (3) the trial court erred in sustaining the Rembrandt Center's objections to appellants' summary judgment evidence, and (4) appellants presented competent summary judgment evidence to show the Rembrandt Center's acts or omissions were the proximate cause of an injury to Debbie Kay Crocker. For the following reasons, we affirm the trial court's judgment.

On January 4, 1997, at the age of forty-four, Debbie Kay Crocker (Crocker) suffered a subarachnoid hemorrhage. Crocker never regained full consciousness and the following month she was admitted to the Rembrandt Center, a nursing home, in a semi-comatose state. On April 18, 1997, Crocker was hospitalized for pneumonia and respiratory distress. Crocker was subsequently discharged from the hospital and transferred to another nursing home.

Crocker died on January 18, 1998, nine months after being discharged from the Rembrandt Center.

Appellants subsequently sued the Rembrandt Center for negligence and gross negligence. They alleged the Rembrandt Center failed to provide Crocker adequate nursing care by failing to give her adequate oxygen and failing to adequately monitor her blood sugar. They alleged these acts and omissions caused Crocker to suffer from severe respiratory distress and hyperglycemia that ultimately resulted in her death. The Rembrandt Center filed a motion for summary judgment asserting appellants had no evidence that:

1. Any act or omission of any defendant proximately caused any injury to Debbie Kay Crocker or Plaintiffs.

2. Any failure of any defendant to provide proper care to Ms. Crocker proximately caused any injuries to Ms. Crocker or Plaintiffs.

In their response, appellants presented summary judgment evidence of various acts of negligence by the Rembrandt Center, including evidence it gave Crocker less oxygen than ordered by her doctors, gave her unhumidified instead of humidified oxygen, failed to properly monitor whether she was receiving adequate oxygen, and failed to properly monitor her glucose levels. To raise a fact question on whether the complained-of actions proximately caused Crocker any injury, appellants presented (1) the affidavit and deposition testimony of Doris Moore, a licensed vocational nurse and former employee of the Rembrandt Center, (2) the affidavit of S. Francis Scholl Foster, a registered nurse, and (3) Crocker's death certificate. Appellants also attached Crocker's medical

---

1. The Honorable Sue L. Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

records and records from the Texas Department of Human Services to Foster's affidavit, which she reviewed to form her opinion. The Rembrandt Center objected to almost all of appellants' summary judgment evidence. Following a hearing, the trial court granted the Rembrandt Center's motion for summary judgment.

■ In a no-evidence summary judgment, the movant must specifically state the elements for which there is no evidence. Tex.R. Civ. P. 166a(i). The nonmovant must then bring forth evidence that raises a fact issue on the challenged elements. *Id.* A no-evidence summary judgment is essentially a pretrial directed verdict to which we apply the same legal sufficiency standard of review. *See Two Thirty Nine Joint Venture v. Joe,* 60 S.W.3d 896, 904 (Tex.App.-Dallas 2001, pet. filed). Although the nonmoving party is not required to marshal its proof, it must present evidence that raises a genuine issue of material fact on the challenged elements. *Id.* A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged elements. *Id.* In determining whether the nonmovant has met its burden, we review the evidence in the light most favorable to the nonmovant and resolve all doubts in its favor. *Id.*

■ In its first issue, appellants contend the trial court erred in granting the Rembrandt Center's motion for summary judgment because its motion was legally insufficient. Appellants did not object to the specificity of the Rembrandt Center's motion in the trial court. Appellants nevertheless assert they were not required to object to the motion because it was legally insufficient. *See McConnell v. Southside Ind. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993). The Rembrandt Center responds

that a nonmovant is required to object to the legal sufficiency of a no-evidence motion for summary judgment to raise that complaint on appeal.

In *McConnell v. Southside Independent School District,* the Texas Supreme Court held that a nonmovant is not required to object to the legal sufficiency of a traditional motion for summary judgment to raise that complaint on appeal. *See id.* at 342. According to the Rembrandt Center, *McConnell* applies only to traditional motions for summary judgment and does not apply here. In the alternative, it asserts its motion was legally sufficient.

■ The San Antonio and Houston Fourteenth courts of appeals have both held that *McConnell* applies to "no evidence" motions for summary judgment and therefore a non-movant may challenge the legal sufficiency of a no-evidence motion for the first time on appeal. *See Cuyler v. Minns,* 60 S.W.3d 209, 213–214 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied) (same). We agree with the San Antonio and Houston Fourteenth courts and disagree with the courts of appeals that have suggested otherwise. *See Walton v. City of Midland,* 24 S.W.3d 853, 857–58 (Tex.App.-El Paso 2000, no pet.)(concluding non-movant must object to preserve complaint motion did not meet the requirements of rule 166a(i)); *Williams v. Bank One, Texas, N.A.,* 15 S.W.3d 110, 117 (Tex.App.-Waco 1999, no pet.)(same); *Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 194–95 (Tex. App.-Amarillo 1999, pet. denied)(same).

Nevertheless, we conclude the Rembrandt Center's motion was legally sufficient. As noted above, the Rembrandt Center asserted in its motion that there was no evidence that (1) any act or omis-

sion of any defendant proximately caused any injury to Crocker or Plaintiffs, or (2) any failure of any defendant to provide proper care to Crocker proximately caused any injuries to Crocker or Plaintiffs. A common-sense reading of the motion supports the Rembrandt Center's assertion it challenged only the proximate cause element of appellants' cause of action. At a minimum, the element challenged was unclear or ambiguous. Under *McConnell,* a nonmovant must object to an unclear or ambiguous motion for summary judgment. *Id.* at 342–43. Therefore, appellants waived any objection that the motion was not more specific.

■ Having determined the motion was legally sufficient, we next decide what evidence was properly before the trial court when it ruled on the motion. The Rembrandt Center objected to appellants' proximate cause evidence on the grounds that (1) appellants' experts, two nurses, were not qualified to give an opinion on proximate cause, (2) one of appellants' experts was not designated as an expert, and (3) the death certificate and medical records attached to one of the affidavits were hearsay. In its order granting summary judgment, the trial court stated:

> The Court, having considered the Motion, the Plaintiffs' Response, the summary judgment evidence *admitted for consideration,* the objections to the summary judgment evidence, the arguments of counsel and the briefs submitted by the parties, is of the opinion that the Defendant's Motion should be granted.

The summary judgment thus indicates the trial court considered the Rembrandt Center's objections and admitted only certain summary judgment evidence. It is therefore apparent the trial court ruled on

the Rembrandt Center's objections when it granted summary judgment. However, the trial court did not sign a written order sustaining the Rembrandt Center's objections until eighty-nine days after it rendered its judgment. Appellants assert the Rembrandt Center waived its objections to the summary judgment evidence by not obtaining a written ruling until "well after" the trial court ruled on the motion for summary judgment. The Rembrandt Center responds the rulings were timely reduced to writing because the trial court still had plenary jurisdiction when it entered the order.[2]

It is well established that rulings on summary judgment evidence must be reduced to writing. The purpose of this rule is two-fold. First, a ruling is necessary to comply with the ordinary rules of preservation of error. *See generally,* Tex.R.App. P. 33.1(a)(2)(A). Second, a written ruling is necessary so that a court of appeals can ascertain what summary judgment evidence was considered by the trial court in reaching its decision. *See Utilities Pipeline Co. v. American Petrofina Mktg.,* 760 S.W.2d 719, 722 (Tex.App.-Dallas 1988, no writ).

Appellants rely on authority concerning preservation of *appellate complaints* to support its contention that the Rembrandt Center waived error. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Chapman Children's Trust v. Porter & Hedges,* 32 S.W.3d 429, 436 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In doing so, appellants confuse a party's duty to preserve error with a trial court's authority to rule on objections. The issue in this case is not whether the Rembrandt

---

**2.** Because appellants filed a timely motion for new trial, the trial court had plenary jurisdiction for 105 days after it signed its judgment.

*See L.M. Healthcare, Inc. v. Childs,* 929 S.W.2d 442, 444 (Tex.1996).

Center (which obtained a favorable ruling in the trial court) preserved its complaint for appellate review. Rather, the issue is whether the trial court's order, which was reduced to writing eighty-nine days after the summary judgment was signed, was effective. Appellants have cited no authority for the proposition that rules of preservation of error affect the trial court's authority to delay reducing its rulings to writing if it so chooses. Indeed, the authority relied on by appellants suggests otherwise. Specifically, the court in *Dolcefino* stated only that a party must obtain a written ruling on its objections, "at, before, or very near the time the trial court rules on the motion for summary judgment or *risk* waiver." *See Dolcefino*, 19 S.W.3d at 926. Thus, *Dolcefino*, indicates only that a trial court is not *required* to reduce to writing any rulings on summary judgment evidence if it is not timely requested to do so. *See also Chapman Children's Trust*, 32 S.W.3d at 436. *Dolcefino* does not suggest the trial court is not permitted to do so.

Moreover, appellants concede an order on objections can be signed after a summary judgment order is signed. They merely complain that, in this case, the trial court waited too long. In their brief, appellants do not attempt to provide any specific time period in which a trial court has to sign an order on objections to summary judgement evidence. However, in oral argument, appellants suggested the trial court has until any motion for new trial is overruled. We disagree for several reasons.

First, appellants base their proposal on the assumption that after a motion for new trial is overruled, the trial court has necessarily disposed of the objections to the summary judgment evidence. However, the same could be said of when the trial court signs its summary judgment order.

Second, we are not determining whether a trial court can decide summary judgment objections following the grant of summary judgment, but only whether a trial court's written order reducing its previous rulings to writing is effective. Finally, because a trial court has authority to completely set aside a summary judgment while it retains plenary jurisdiction, it is only logical the trial court has authority to reduce its previous rulings to writing during the same time period. We conclude a trial court may reduce its rulings on summary judgment evidence to writing as long it retains plenary jurisdiction.

In this case, the summary judgment order reflects the trial court considered and ruled on the summary judgment objections before it rendered judgment. However, the summary judgment order does not reveal the substance of those rulings. During the trial court's plenary jurisdiction, it reduced its rulings to writing to show it sustained the Rembrandt Center's objections. We conclude that because the record shows the trial court ruled on the objections before it granted summary judgment and because the trial court signed a written order memorializing its rulings while it retained plenary jurisdiction, the trial court's rulings were effective.

■ Appellants next assert the trial court erred in sustaining the Rembrandt Center's objections to their summary judgment evidence. The trial court's ruling sustaining the Rembrandt Center's objection to the nurses' qualifications to give expert testimony on proximate cause is dispositive; thus, we will address it first.

■ In a medical malpractice suit, the proximate causation element must generally be proven by expert testimony. *See Bowles v. Bourdon*, 148 Tex. 1, 6, 219 S.W.2d 779, 782–83 (1949); *Lesser v. St. Elizabeth Hosp.*, 807 S.W.2d 657, 659 (Tex. App.-Beaumont 1991, writ denied). When

a party relies on expert testimony to defeat a movant's motion for summary judgment, the party must include proof of the expert's qualifications. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). Whether a witness is qualified to give expert testimony is a matter committed to the trial court's discretion. *Id.* The burden of establishing an expert's qualifications is on the offering party. *Id.* at 31.

In this survival action and wrongful death suit, appellants alleged the Rembrandt's acts and omissions caused Crocker to suffer from severe respiratory distress and hyperglycemia that ultimately resulted in her death. Thus, the question presented is whether the trial court abused its discretion in determining the nurses were not qualified to provide expert opinion testimony regarding the proximate cause of *those* injuries. In reaching this conclusion, we reject appellants suggestion that they needed only to establish the nurses qualifications to testify about the proximate cause of *any* injury Crocker may have suffered while at Rembrandt. Appellants petition alleged the Rembrandt Center proximately caused specified injuries: (1) respiratory distress, (2) hyperglycemia, and (3) death. Therefore, to raise a *material* fact issue, they were required to present some evidence to support their allegations. *Cf. Cook v. Brundidge, Fountain, Elliott & Churchill*, 533 S.W.2d 751, 759 (Tex.1976)(movant in a traditional summary judgment must meet a plaintiff's case as pleaded); *Jones v. Wal–Mart Stores, Inc.*, 893 S.W.2d 144, 147 (Tex.App.-Houston [1st. Dist.] 1995, no writ) (same). Consequently, appellants were required to show their nurse experts were qualified to provide an expert opinion with respect to proximate cause of the injuries alleged.[3]

Appellants correctly note that nurses are not per se barred from providing an expert opinion on proximate cause in medical malpractice cases. Specifically, a nurse expert can testify about issues within her knowledge, skill, experience, and training. *Arlington Mem'l Hosp. Found., Inc. v. Baird*, 991 S.W.2d 918, 920 (Tex.App.-Fort Worth 1999, pet. denied). Here, appellants have not attempted to show the nurses were qualified to testify with respect to whether the Rembrandt Center proximately caused Crocker's *death*, and the nurses proffered no such testimony. Instead, appellants suggest the nurses were qualified to testify to proximate cause with respect to Crocker's respiratory distress and hyperglycemia. In her affidavit, to show her qualifications, Foster stated only that she was a registered nurse, was board certified as a gerontological nurse practitioner, and was familiar with the applicable standard of care. Moore stated only that she was a licensed vocational nurse who has received training in the *care* of patients with feeding tubes and on ventilators. Neither nurse established any specialized expertise with respect to causation of any condition, much less respiratory failure or hyperglycemia. Therefore, we cannot conclude the trial court abused its discretion in concluding appellants' expert nurses were not qualified to testify as to proximate cause.

■ Appellants next assert expert testimony was not necessary to raise a fact question on proximate cause. Specifically, they contend "it is common knowledge that depriving a person of oxygen will cause them injury." Crocker was not on a respirator, but was administered oxygen through her tracheotomy with a mist machine. We cannot agree that it is common knowledge that the Rembrandt Center's

---

3. We recognize that in its motion, the Rembrandt Center asserted there was no evidence of proximate cause of *any* injury. The Rembrandt Center was necessarily referring to any alleged injury.

actions in giving Crocker (a semi-comatose patient suffering from pneumonia) less oxygen than ordered by her doctors, giving her unhumidified instead of humidified oxygen, and failing to properly monitor whether she was receiving adequate oxygen proximately caused her respiratory distress or hyperglycemia. Therefore, expert testimony was required to raise a fact question on whether the Rembrandt Center's negligence proximately caused Crocker's alleged injuries.

■ Appellants next assert the trial court erred in granting summary judgment because they presented sufficient evidence of proximate cause apart from the expert testimony that was stricken. They rely on Texas Department of Human Services (TDHS) records for the Rembrandt Center concerning a complaint filed regarding Crocker. The records show several allegations were made against the Rembrandt Center concerning Crocker. Allegation 2 alleged the Rembrandt Center was negligent in that:

1. Staff set the resident's oxygen tank on (1) instead of (3) as ordered and she went without the correct amount of oxygen for several days.

2. The resident's .mist machine was broken for several days until she became "dehydrated, her mucous completely dried up and her legs turned black."

A notation on the record shows allegation 2 was "substantiated." To the extent the "substantiated" notation suggests allegation 2 was correct in its entirety, we nevertheless conclude the records fail to raise a fact issue on proximate cause. Specifically, the records do not show that Crocker's broken mist machine or incorrect oxygen dosage proximately caused Crocker's respiratory distress, hyperglycemia, or her death. Therefore, the records do not raise a fact issue on proximate cause.

Appellants also complain the trial court erred in sustaining the Rembrandt Center's objections to Crocker's medical records and her death certificate. However, appellants have directed us to no evidence in the medical records or the death certificate showing proximate cause. Therefore, we need not decide whether the trial court erred in sustaining those objections. *See* TEX.R.APP. P. 44.1(a)(1); *17090 Parkway, Ltd. v. McDavid,* 80 S.W.3d 252, 259 (Tex. App.-Dallas 2002, no pet.)(party complaining of error in the exclusion of evidence has the burden to show error probably caused the rendition of an improper judgment.)

We have reviewed the summary judgment evidence and conclude the trial court properly determined appellants did not present more than a scintilla of evidence of proximate cause. Therefore, the trial court properly granted the Rembrandt Center's motion for summary judgment.

We affirm the trial court's judgment.