Affirmed and Opinion filed _____________, 2003
















Affirmed in Part; Reversed and Remanded in Part; and Opinion filed March
2, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00112-CV

____________

 

NELLIE JOHNSON,
MONA FELTS AND MARY CUDD, Appellants

 

V.

 

LINETTE FELTS, Appellee

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 268th District Court

Fort Bend County, Texas

Trial Court Cause
No. 104,744




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



O P I N I
O N

            Appellants Nellie Johnson, Mona
Felts and Mary Cudd appeal from two summary judgments granted by the trial
court.  The first order, dated September 6, 2001,
originally granted summary judgment to appellee Linette Felts as to all claims
brought by appellants Johnson, Felts and Cudd. 
On November 13, 2001,
the first order was modified to set aside the summary judgment against
appellant Cudd.  However, the second
order, dated August 13, 2002,
again granted summary judgment to appellee on all claims brought by appellant
Cudd.  We reverse and remand the first
order for trial but affirm the second order.

Background

            Appellants Johnson and Felts originally
brought suit against appellee and her alleged boyfriend, Stacy Booker, claiming
that the defendants had wrongfully brought about the death of appellee’s
husband, Steven Felts.  Neither appellee
nor Booker was ever charged in connection with his death.  Appellee was designated as a beneficiary of
her husband’s life insurance proceeds, retirement benefits, and investment
accounts.

Appellants sought a declaratory judgment, damages for
wrongful death, the imposition of a constructive trust on all assets inherited
by appellee, and forfeiture of her interest in the life insurance proceeds.[1]  Appellant Cudd intervened in the suit as
legal guardian for appellee’s daughter, Lynnlee Felts, and brought the same three
claims plus a negligence claim[2]
against the defendants.  Connecticut
General Life Insurance Company intervened and filed an interpleader action by
depositing the proceeds of the life insurance policy held by Steven Felts in
the registry of the trial court.

The two interlocutory summary judgments became final for
purposes of this appeal by the trial court’s November 12, 2002 and December 19, 2002 orders. See Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001). 
The former order granted appellants’ non-suit of all claims against
defendant Booker.  The latter sustained
the interpleader action brought by Connecticut General Life Insurance Company
and dismissed it as a party to the case. 
Appellants now raise six issues on appeal.

 

Issues Presented for
Review

In their first four issues, appellants argue that the trial
court erred in granting the first summary judgment,[3]
which dismissed all claims brought by appellants Johnson and Felts against
appellee.  They contend: (1) appellee
failed to carry her burden of proof required for traditional summary judgment,
(2) appellee’s no-evidence motion for summary judgment was legally
insufficient, (3) appellants carried their burden in response to appellee’s
no-evidence claim, and (4) the trial court erred in granting more summary
judgment relief than was requested by appellee. 
In their fifth and sixth issues, appellants argue the trial court erred
in granting the second summary judgment, which dismissed all of appellant
Cudd’s claims against appellee.  They
contend: (5) appellee’s no-evidence motion for summary judgment was legally
insufficient, and (6) the trial court erred in granting appellee’s second
no-evidence motion for summary judgment.

Waiver

As an initial matter, appellee contends that appellants did
not preserve error as to their second and fifth issues because appellants
failed to object to the legal sufficiency of her no-evidence motions for
summary judgment in their responses.  A
respondent may challenge the legal sufficiency of a no-evidence motion for the
first time on appeal. See McConnell v. Southside
Indep. Sch. Dist., 858 S.W.2d 337, 342 (Tex. 1993) (applying the rule to motion for
traditional summary judgment); Cuyler v.
Minns, 60 S.W.3d 209, 213 (Tex. App.—Houston
[14th Dist.] 2001, pet. denied) (applying McConnell to no-evidence motion); Crocker v. Paulyne’s Nursing Home, Inc., 95 S.W.3d 416, 419 (Tex.
App.—Dallas 2002, no pet.); Callaghan
Ranch, Ltd. v. Killam, 53 S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet.
denied). But see Walton v. City of
Midland, 24 S.W.3d 853, 857-58 (Tex. App.—El Paso 2000, no pet.); Williams v. Bank One, Texas, N.A., 15 S.W.3d 110, 117 (Tex.
App.—Waco 1999, no pet.); Roth v. FFP
Operating Partners, L.P., 994 S.W.2d 190, 194-95 (Tex. App.—Amarillo 1999,
pet. denied).  Therefore, appellants’
failure to object to appellee’s motions on legal insufficiency grounds in their
responses did not waive their second and fifth issues before this Court.

Traditional Summary
Judgment

            In their first issue, appellants
argue that traditional summary judgment is inappropriate because appellee
failed to carry her burden of proof.  To
prevail on a traditional motion for summary judgment, a movant must establish that
because there is no genuine issue as to any material fact, the movant is
therefore entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). 
A defendant who either conclusively negates at least one of the
essential elements of each of the plaintiff’s causes of action or conclusively
establishes all elements of an affirmative defense is entitled to summary
judgment. Cathey v. Booth, 900 S.W.2d
339, 341 (Tex.
1995).  In order to conclusively negate
at least one of the requisite elements, the motion must identify or address the
cause of action or defense and its elements. See Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990).

            In the present case, appellee stated
in her first motion for summary judgment that she did not murder her husband
and analogized the instant civil causes of action to the crime of murder.  She also made a conclusory objection to the
wrongful death action and asserted that she was entitled to summary judgment as
to all claims made against her.  Because
appellee failed to identify the elements of the various causes of action
brought by appellants and did not address any specific elements thereof, we
therefore hold that traditional summary judgment is inappropriate and sustain
appellants’ first issue.

The First No-Evidence
Motion

            In their second issue, appellants
argue that appellee’s first no-evidence motion is legally insufficient to
entitle her to summary judgment.  A
no-evidence summary judgment motion must state the specific elements as to
which there is no evidence. Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). 
An appellate court cannot read between the lines, infer or glean from
the pleadings or proof any grounds for summary judgment other than those
grounds expressly set forth before the trial court in the motion. McConnell, 858 S.W.2d at 343.

            Again, appellee here failed to
identify or address any specific elements of any of appellants’ causes of
action in her first motion for summary judgment.  We therefore hold that appellee’s first
no-evidence motion for summary judgment is insufficient as a matter of law and
sustain appellants’ second issue. 
Because we have determined that the trial court erred in granting the
first summary judgment, whether of the traditional or no-evidence variety, we
must reverse and remand that order for trial. 
Accordingly, it is unnecessary to consider appellants’ third and fourth issues.

The Second No-Evidence
Motion

            In their fifth issue, appellants
argue that appellee’s second no-evidence motion is legally insufficient to
entitle her to summary judgment.  In
applying the same standards as stated above, we find that appellee’s second no-evidence
motion is legally sufficient. See Johnson, 73 S.W.3d at 207; McConnell, 858 S.W.2d at 343.  In contrast to her first motion, appellee’s
second no-evidence motion identifies and addresses specific elements of
appellants’ causes of action.  Appellee
contends in her motion that there is no evidence of causation, which is identified
as an element common to all causes brought by appellants.  Because she has complied with Rule 166a(i) of
the Texas Rules of Civil Procedure and has brought a legally sufficient
no-evidence motion for summary judgment, we overrule appellants’ fifth issue.

            In their sixth issue, appellants
argue that the trial court erred in granting appellee’s second no-evidence
motion for summary judgment.  To defeat a
no-evidence motion, a respondent is not required to marshal its proof, but only
to point out evidence that raises a fact issue on the challenged element(s). Johnson, 73 S.W.3d at 207.  We consider all evidence in the light most
favorable to the party against whom the motion was brought, disregarding all
contrary evidence and inferences.  Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 1119 (1997).

            Circumstantial evidence may be used
to establish any material fact, but it must transcend mere suspicion.  Lozano
v. Lozano, 52 S.W.3d 141, 149 (Tex.
2001).  The material fact must be
reasonably inferred from known circumstances. 
Id. 
Each piece of circumstantial evidence must be viewed not in isolation,
but in light of all known circumstances. 
Id. 
Based upon these principles, appellant argues that the following
evidence presents a fact issue as to whether appellee, either as the primary
actor or as an accomplice, caused the death of her husband.[4]

            In response to questions from
Detective Brad Rollins of the Houston Police Department, appellee denied she
was having any marital problems just prior to the death of her husband, Steven
Felts.  But appellee later admitted that she
and her late husband had contemplated divorce proceedings in May 1996.  She also admitted that the couple had
considered seeing a marriage counselor. 
The record even reveals that the couple considered whether some “time
apart” might help their relationship.

            That appellee and her late husband
were experiencing marital difficulties just prior to the homicide was further
established by other facts.  First, the
evidence establishes that appellee’s husband, upon learning appellee spent time
with her friend Portia Bell the weekend prior to his death, locked appellee out
of the house the day before he was killed. 
Second, her husband maintained a separate personal bank account and
transferred a large sum of money out of their joint account at Nations Bank and
into his separate account at Norwest on the day he was killed.  There is evidence that her husband did this
specifically because he did not want her to have access to it.

            Moreover, despite appellee’s denials
that she ever took part in any extra-marital affairs, the evidence establishes
otherwise.  Apparently, Steven Felts was
aware that his wife participated in at least two affairs — one with a “Spanish
guy” in Rosenberg and one with a “truck driver”
in Houston
(presumably, Alfred Hinton). 
Additionally, appellee admitted to having an affair with Clyde Gibbens
in 1994, and with Hinton sometime after her husband’s death.  The record also tends to establish the
existence of an affair between appellee and Hinton just prior to her husband’s
death.  In yet another tape recorded
conversation, appellee was asked by an unknown male about her “boyfriend,” and
appellee did not object to the use of that term.

            The evidence also establishes that appellee
misled police as to the presence of guns at her home.  Appellee initially claimed that she walked in
the doorway and saw her husband’s body, then looked at the gun cabinet and
noticed that most of the guns were gone. 
When confronted with the fact that one cannot see the guns from the
doorway area, appellee recanted and then claimed that she walked the full
length of the couch before discovering the guns were missing.  She initially claimed that six guns were
stolen from the gun cabinet, but then later amended this answer by stating that
there were five guns originally in the cabinet, four of which were stolen.  Appellee also initially told police that her
.38-caliber pistol was located at her father’s house in Victoria. 
But she later claimed that, instead of leaving the pistol there, she had
loaned it to Stacy Booker.  Finally,
appellee concealed the presence of firearms in the attic above the garage from
the police.

            Appellee’s account of the events
leading up to her husband’s death also contained numerous inconsistencies and instances
in which she changed her story.  For
example, she stated that two weekends prior to the death of her husband, she
traveled to Louisiana
to go gambling and spent the weekend alone. 
However, in a recorded conversation, she told a friend that she in fact
did not go gambling alone during that time. 
More importantly, however, her timeline of events changed frequently
during the course of the police investigation. 
Appellee initially told police she went to Wal-Mart around 9:00 p.m., returned home at around 10:00, could not recall what happened
between 10:00 and 11:15 p.m., and then went to get
hamburgers at 11:15 p.m..  Later, she told Detective Rollins she went to
Wal-Mart around 8:30 p.m.,
returned home at 9:30, then
left sometime between 10:00
and 11:00 p.m. to pick up
the burgers.  During her deposition, she
changed her story again, claiming she left for Wal-Mart around 8:30 p.m., returned home, then left
to get the burgers at 9:30,
and finally returned home at 11:50 p.m..  Finally, appellee initially claimed her
husband had sent her to Whataburger to pick up hamburgers, but she later
changed her story when confronted with autopsy evidence that his stomach had
been full at the time of death, having already eaten bologna sandwiches at
home.  Thus, the numerous inconsistencies
in appellee’s versions of the events misled the police about the timing and
sequence of the events occurring on the night of her husband’s death.

            Detective Rollins of the Rosenberg police testified
by affidavit that he believes appellee willfully caused the death of her
husband.[5]

            While the sum total of the
voluminous testimony presented by appellant may constitute evidence that some
wrongful act had been committed, not one scintilla of causation evidence was
ultimately produced — even if we disregard all of appellee’s evidentiary
objections. See Lozano, 52 S.W.3d at
149.  A conclusion that appellee caused
the death of her husband would be based on nothing but mere possibility,
speculation, and surmise. See Havner, 953
S.W.2d at 712.  The circumstantial
evidence is so meager that an inference that appellee caused the death of her
husband is “purely a guess.” See Lozano, 52 S.W.3d at 148.  Accordingly, the trial court did not err in
granting appellee’s second no-evidence motion for summary judgment.  We overrule appellants’ sixth issue.

Conclusion

            We affirm the trial court’s second
grant of summary judgment in favor of appellee on all claims brought by
appellant Cudd.  We reverse and remand the
first grant of 

 

 

 

 

summary
judgment in favor of appellee on all claims brought by appellants Johnson and Felts
for further proceedings.

 

                                                                                    

                                                                        /s/        Adele Hedges

                                                                                    Chief
Justice

 

Judgment rendered and Opinion filed March 2,
2004.

Panel consists of Chief Justice Hedges and
Justices Anderson and Guzman.

 

 











[1]
Appellants Johnson and Felts contend that the amended pleading they filed along
with appellant Cudd containing their negligence claim was properly before the
trial court.  We disagree.  In absence of the trial court denying leave
to file an amended pleading, this Court will only presume the trial court granted
leave to file when, inter alia, the
record fails to show the trial court did not consider it. See Goswami v. Metro. Sav. & Loan Ass’n, 751 S.W.2d 487, 490 (Tex. 1988).  In the present case, the record clearly reveals
the amended pleading was not considered. 
Therefore, the amended pleading containing their negligence claim was
not properly before the trial court.





[2] We
assume but do not decide that since appellant Cudd’s negligence claim was
addressed in appellee’s second motion for summary judgment, it was properly
before the trial court.





[3] The
trial court did not state the grounds upon which the motion was granted.  Appellee’s first motion combined both
traditional and no-evidence summary judgment claims.





[4] We note
that while appellee objects to the admissibility of much of the evidence presented
below, she failed to obtain a ruling on these objections and therefore waived
them before this Court. See Miga v.
Jensen, 96 S.W.3d 207, 212-13 (Tex.
2002).





[5] An
expert’s bare opinion testimony, however, is insufficient to support such a
finding; rather, the substance of the testimony must be considered. Havner, 953 S.W.2d at 711.