# NO. 12-07-00287-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *D'JUANA DUNN, INDIVIDUALLY AND AS NEXT FRIEND FOR J. D., APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *CLAIRMONT TYLER, LP AND COLONIAL TYLER CARE CENTER, LP, APPELLEES* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

D'Juana Dunn, individually and as next friend for J.D., appeals the trial court's order granting summary judgment in favor of Clairmont Tyler, LP and Colonial Tyler Care Center, LP. In two issues, Dunn contends that the trial court erred in granting Clairmont and Colonial's motions for summary judgment and motion to dismiss. We affirm.

## BACKGROUND

Dunn is the mother of J.D., a brain injured convalescent woman. On August 2, 2001, when she was a resident of Pinecrest Nursing Home, J.D. was sexually assaulted by Thomas Wheeler, a nurse aide employed by Pinecrest. Wheeler had previously been terminated from his employment as a nurse aide with Clairmont for alleged behavior that had the potential to jeopardize residents' quality of care and for poor judgment, but no misconduct. He also had been terminated as a nurse aide from Colonial for alleged inappropriate behavior. On September 24, 2004, Dunn filed suit against Clairmont and Colonial alleging negligence and negligence per se.

She alleged that neither Clairmont or Colonial filed a report regarding Wheeler's alleged behavior and/or misconduct as required by law.[1] Clairmont and Colonial filed a traditional motion for summary judgment alleging that Dunn's claims against them were health care liability claims and, thus, her suit was barred by the applicable statute of limitations governing such claims.[2] They also filed a no evidence motion for summary judgment alleging, in part, that there was no evidence that they owed Dunn any duty, that they breached any duty to Dunn, or that anything they did or failed to do proximately caused the occurrence in question. Finally, they filed a motion to dismiss alleging that Dunn failed to submit an expert report within 120 days of filing her original petition as required by statute.[3] The trial court granted the motion to dismiss and both the traditional and no evidence motions for summary judgment. This appeal followed.

## STANDARD OF REVIEW

The propriety of summary judgment is a question of law, which we review de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The movant for traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-50 (Tex. 1985). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Cooper v. D & D G.C. of Gilmer, Inc.*, 187 S.W.3d 717, 719 (Tex. App.–Tyler 2006, no pet.) (citing *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997)). If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's

---

[1] *See* TEX. HEALTH & SAFETY CODE § 242.122(a) (Vernon 2001).

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (Vernon 2005).

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2008).

2

favor. ***Diversicare***, 185 S.W.3d at 846. When, as here, a summary judgment does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced are meritorious. ***Western Inv., Inc. v. Urena***, 162 S.W.3d 547, 550 (Tex. 2005). Generally, when a party seeks both a traditional and a no evidence summary judgment, we first review the trial court's summary judgment under the no evidence standards of Texas Rule of Civil Procedure 166a(i). ***Ford Motor Co. v. Ridgway***, 135 S.W.3d 598, 600 (Tex. 2004). If the nonmovant failed to produce more than a scintilla of evidence raising a genuine fact issue on the challenged elements of his claims, there is no need to analyze whether the movant's summary judgment proof satisfied the traditional summary judgment burden of proof under rule 166a(c). ***Id.*** It logically follows, however, that this rule cannot be applied unless the same issue was raised in both motions. In this case, the limitations issue is dispositive but was raised only in the traditional motion. Therefore, we need not address the no evidence summary judgment.

## HEALTH CARE LIABILITY CLAIM

In her first issue, Dunn argues that the trial court erred in finding that no genuine issue of material fact exists regarding Clairmont's and Colonial's negligence and negligence per se. Specifically, she contends that her claims against Clairmont and Colonial are personal injury claims, not health care liability claims. As such, she argues that the statute of limitations for personal injury claims governs this suit. Because J.D. was mentally incapacitated on the date of occurrence, Dunn contends that the statute of limitations was tolled. Clairmont and Colonial disagree.

### Applicable Law

Chapter 74 of the Civil Practices and Remedies Code governs health care liability claims in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001-.507 (Vernon 2005 & Supp. 2008). A "health care liability claim" is a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13)

3

(Vernon 2005).  A "health care provider" is any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including a health care institution.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(12)(A) (Vernon 2005).  A "health care institution" includes an assisted living facility and a nursing home.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(11)(B), (J).

To determine whether a cause of action falls under Chapter 74's definition of a "health care liability claim," we examine the claim's underlying nature.  *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004).  If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim.  *Id.* at 544; *see also* *Smalling v. Gardner*, 203 S.W.3d 354, 363 (Tex. App.–Houston [14th Dist.] 2005, pet. denied) ("[T]he court's focus is whether the essence of the claim asserted by the plaintiff involves departures from accepted standards of medical care.").

Under Chapter 74, the statute of limitations for a health care liability claim is two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a) (Vernon 2005).  The only exception is for minors under twelve years of age.  *Id.*  Further, the limitation period applies to all persons regardless of minority or other legal disability.  *Id.*; *Yancy v. United Surgical Partners Int'l, Inc.*, 170 S.W.3d 185, 189 (Tex. App.–Dallas 2005), *aff'd*, 236 S.W.3d 778 (Tex. 2007).  General tolling statutes tolling limitations periods due to unsound mind or mental incompetence of the plaintiff are inapplicable to health care liability claims.  *See* *Yancy*, 170 S.W.3d at 189.

## Analysis

In her brief, Dunn argues that J.D. was never a patient or resident at either Clairmont or Colonial and that no health care provider relationship existed between them.  Therefore, she contends, her claims are not health care liability claims, but instead are personal injury claims based on Clairmont's and Colonial's negligence and negligence per se.  Therefore, Dunn argues, the applicable statute of limitations is found in section 16.003 of the Texas Practice and Remedies

4

Code.[4]

Clairmont and Colonial contend that the essence of Dunn's action involves J.D.'s safety while under the care of a health care provider. They argue that they are health care providers as that term is defined by section 74.001 of the Texas Civil Practice and Remedies Code, and that safety is part of a health care liability claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(12)(A), (13).

As explained above, to determine whether Dunn's suit falls within Chapter 74's definition of a "health care liability claim," we examine the underlying nature of Dunn's claims against Clairmont and Colonial. *See **Garland Cmty. Hosp.***, 156 S.W.3d at 543; ***Smalling***, 203 S.W.3d at 362-63. In doing so, we are not bound by Dunn's own characterization of her claims. *See **Smalling***, 203 S.W.3d at 363. Dunn cannot use artful pleading to avoid the requirements of Chapter 74 if the essence of her suit is a health care liability claim. *See **Garland Cmty. Hosp.***, 156 S.W.3d at 543; ***Smalling***, 203 S.W.3d at 363.

We note that Chapter 74 does not define "safety." *See **Diversicare***, 185 S.W.3d at 855. The commonly understood meaning of safety is the condition of being "untouched by danger; not exposed to danger; secure from danger, harm or loss." *See **id.*** (citing BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). The legislature's inclusion within the scope of Chapter 74 of claims based on breaches of accepted standards of "safety" expands the scope of the statute beyond what it would be if it covered only medical and health care. *See **id.*** Professional supervision, monitoring, and protection of the patient population necessarily implicate the accepted standards of safety under a health care liability claim. *See **id.*** Thus, part of a nursing home's duty in providing care to its patients is to protect their right to receive care in a safe setting free from all forms of abuse or harassment. *See **NCED Mental Health, Inc. v. Kidd***, 214 S.W.3d 28, 36 (Tex. App.–El Paso 2006, no pet.).

In order to ensure the safety of nursing home patients, the federal government ordered that

---

[4] The statute of limitations for a personal injury claim is two years after the date the cause of action accrues unless the person entitled to bring a personal action is under a legal disability. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.001(b), 16.003(a) (Vernon 2002).

each state must establish and maintain a registry of all nurse aides, which shall provide for the inclusion of specific documented findings of resident neglect or abuse or misappropriation of resident property involving an individual listed in the registry. *See* Social Security Act, 42 U.S.C.A. § 1395i-3(e)(2)(A), (B)(West 1992). Before employing Wheeler, Pinecrest had an administrative duty created by statute to verify that he was not designated as having a finding entered into the registry concerning abuse, neglect, or mistreatment of a consumer of a facility, or misappropriation of a consumer's property. *See* TEX. HEALTH & SAFETY CODE ANN. § 250.003(a) (Vernon Supp. 2008). Pinecrest's administrative duty to check the nurse aide registry before employing Wheeler related to its duty as a health care provider.

Further, any person, including an owner or employee of an institution, who had cause to believe that the physical or mental health or welfare of a resident had been or may be adversely affected by abuse or neglect caused by another person must report the abuse or neglect to the Texas Department of Human Services or a local or state law enforcement agency. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 242.122(a), 242.125(a) (Vernon 2001 & Supp. 2008). Similar to Pinecrest, therefore, Clairmont and Colonial had an administrative duty, also created by statute, to report any abuse or neglect by Wheeler. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.122(a). This administrative duty to report also implicates their duty as health care providers. *See* TEX. HEALTH & SAFETY CODE ANN. § 242.122(a). Because this duty to report an administrative matter cannot be separated from a health care provider's responsibility to ensure resident safety, Clairmont's and Colonial's statutory duty to report abuse or neglect by a terminated employee, Wheeler, is an inseparable part of the rendition of health care services. *See* ***Garland Cmty. Hosp.***, 156 S.W.3d at 544; ***Smalling***, 203 S.W.3d at 363. Thus, we conclude that Dunn's suit is a health care liability claim.

Having determined that Dunn's suit is a health care liability claim, the applicable statute of limitations is two years from Wheeler's sexual assault of J.D. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.251. Here, it is undisputed that Dunn filed her suit against Clairmont and Colonial three years after the sexual assault. Because Dunn's suit was filed outside the applicable

limitations period, the trial court did not abuse its discretion in granting summary judgment for Clairmont and Colonial. Accordingly, Dunn's first issue is overruled. Because Dunn's first issue is dispositive, we do not consider her second issue. *See* TEX. R. APP. P. 47.1.

## DISPOSITION

Having overruled Dunn's first issue, the judgment of the trial court is ***affirmed***.


      **JAMES T. WORTHEN**
Chief Justice


Opinion delivered November 26, 2008.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

7